UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | 1:08cr16 |
| ) | ~~1:05-CR~~-51 |
| v. ) | |
| ) | |
| BENNY SWIFT ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On June 23, 2008, Defendant Benny Swift ("Swift"), in anticipation of his upcoming sentencing, filed a "Sentencing Submission" wherein he requested a below-guidelines sentence based upon the factors in 18 U.S.C. §3553(a). At the sentencing hearing, the Court heard arguments of counsel and took the request under advisement. The Court also ordered additional briefs on the issues raised by the Defendant's submission with a new sentencing date set for July 28, 2008. The Government responded on July 2, 2008 to which Swift replied on July 9, 2008. On July 28, 2008, the court held a sentencing hearing in accordance with Fed.R.Crim.P. 32(i) wherein counsel presented their arguments regarding the appropriate sentence to be imposed in this case. The court also provided the defendant an opportunity to speak on his own behalf.

## DISCUSSION

Swift is charged with a two count indictment for violations of 21 U.S.C. §841(a)(1), possession of cocaine with intent to distribute; and 18 U.S.C. §924(c), possession of a firearm in furtherance of the drug trafficking crime. The probation officer prepared a Presentence Investigation Report that calculates Swift's total offense level, pursuant to the U.S.S.G. Sentencing Guidelines,

1

to be 23 and his criminal history category to be IV. This leaves Swift with a guideline range of imprisonment of 70-87 months on Count I with a consecutive 5 year mandatory minimum on Count 2 for a total guideline sentence of 130 - 147 months. In the plea agreement, the Government agreed to recommend the low end of the applicable guideline range, 130 months.. Swift now seeks a variance from the advisory guidelines range contending that the factors in 18 U.S.C. §3553(a) as well as case law support a below-guidelines sentence in his case.

One argument for a below guidelines sentence made by Swift arises from a case out of the 9th Circuit, *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). By statute, the Bureau of Prisons ("BOP")OP is authorized to reduce by up to one year, the sentence of a prisoner who completes a residential substance abuse treatment program. However, the sentence reduction is limited to prisoners convicted of nonviolent offenses and the Supreme Court has upheld the validity of rules promulgated by the BOP which permit the BOP to narrow the class of prisoners eligible for early release. *See Lopez v. Davis,* 531 U.S. 230, 239-41(2001).

The *Arrington* case involved a decision by the BOP to categorically exclude from eligibility for early release, those prisoners convicted of offenses involving the possession, carrying, or use of firearms. The Ninth Circuit held that the BOP's "promulgation of [28 C.F.R. § 550.58] was arbitrary and capricious because it failed to articulate a rationale for its categorical exclusion of a class of nonviolent offenders from eligibility for early release." *Arrington*, 516 F.3d at 1116. The *Arrington* case did not, however, hold that the BOP was without authority to promulgate a rule that categorically excluded prisoners convicted of gun offenses; it held only that the particular rule was not valid under the requirements of the Administrative Procedures Act. *Id.* at 1115. As a result of this case, BOP institutions in the 9th Circuit are required to follow a different methodology of

2

determining eligibility for the substance abuse programs in situations where a firearm was used or possessed. One district court, has declined to follow Arrington. *See Gatewood v. Outlaw*, 2008 WL 2002650, 3 (E.D.Ark.,2008) ("This Court declines the invitation to adopt the holding in *Arrington*, as it appears to conflict with the reasoning in controlling Supreme Court and Eighth Circuit precedent.")

Swift's argument is that because of his §924(c) conviction under he will be ineligible for participation in the residential substance abuse treatment program offered by the BOP in all institutions except for ones in the 9th Circuit. Swift contends this is unfair and thus, the court should consider an "upfront" reduction in his term of imprisonment by 10 months.

The Government's response is threefold. First, the Government argues that because Swift has been convicted of a crime of violence, he is ineligible for the reduction. The statute provides, "the period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year." 18 U.S.C. 3621. Second, the Government argues that if the court grants Swift's request on this basis alone, it is rewarding Swift for completing a drug treatment program without having done the program. Finally, and perhaps most convincing, the Government argues that Swift's argument is premature in that, the appropriate manner (and the route taken by the defendants in the *Arrington* case) to pursue this issue is for Swift to apply for the program, have entry denied and then pursue his remedies under §706 of the Administrative Procedures Act ("APA")and/or through a §2241 proceeding in the district of his confinement.

Having reviewed the arguments and case law, the court is in agreement with the Government

3

that Swift's argument relating to his entry into the drug treatment program is premature.[1] And, for this reason, the request for a below-guidelines sentence is unsupportable on that basis alone. However, in his reply brief, Swift somewhat abandons this argument and argues instead that a 10 month reduction is "sufficient but not greater than necessary" to accomplish the goal of sentencing. (See Reply brief at p. 2: "Mr. Swift did not intend to rely solely upon the RDAP argument; he did not ask for a benefit before program work was completed and he is not attempting to challenge his conditions of confinement. His argument is simply that 120 months is sufficient, but not more than necessary, to accomplish the stated objectives of imprisonment."). Swift then goes on to list the following reasons why the court should consider 120 months a sufficient sentence:

(1) he belongs to the segment of the population over-represented in prisons
(2) he has no prior felony offenses although his criminal history category under the Guidelines is IV.
(3) he had little guidance as a youth
(4) he voluntarily surrendered himself to police and gave an immediate confession
(5) he has expressed goals for educating himself while incarcerated so he can be a better example to his children upon his release.

All told, Swift seeks a 10 month reduction so that he is sentenced at the statutory mandatory minimum for both counts of the indictment..

The Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), held that the Guidelines were to be advisory, and the Court's more recent decision in *Rita v. United States,* --- U.S. ----, 127 S.Ct. 2456(2007), confirms that, as far as the sentencing court is concerned, the guideline range is simply one of the several factors listed in 18 U.S.C. § 3553 that must be considered in

---

[1]Nothing in this Order precludes Swift from applying for entry into the drug treatment program once he is sentenced and, if entry is denied, pursuing his remedies under §706 of the APA.

4

arriving at a just sentence, "sufficient, but not greater than necessary," to meet the traditional purposes of criminal sentences.[2] See, *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006) (explaining that the district court's job is not to impose a "reasonable" sentence, but to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2)). Thus, a sentencing judge must make "an *independent* determination of what sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a) ... taking into account the advisory Guideline range, the relevant § 3553(a) factors, and any other nonfrivolous arguments presented in support of a particular sentence." *United States v. Wilms*, 495 F.3d 277, 282 (6th Cir.2007) (emphasis in original).

A district court is required to engage in a two-part sentencing procedure. First, the sentencing judge must be assured that the Guidelines sentence is properly calculated. After calculating the Guidelines range, a district court must give both parties an opportunity to argue for whatever sentence they deem appropriate, and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by a party. *Gall v. United States,* 128 S.Ct. 586, 596 (2007); *United States v. Dale,* 498 F.3d 604, 611-12 (7th Cir.2007). But, as the Seventh Circuit has recently explained, this procedure demands that the court "sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier,* 491 F.3d 680, 685 (7th Cir.2007). Indeed, the district court's task is to "consider" the seven listed factors contained in § 3553(a), and then to employ that consideration in arriving at a sentence that coincides with the parsimony provision, (i.e., is sufficient but not greater than necessary to accomplish the retributivist (just deserts/punishment) or utilitarian (promoting respect

---

[2]This is known as the "parsimony provision."

for the law/deterrence, protecting the community, rehabilitation) theoretical purposes of sentencing listed in § 3553(a)(2)). *See United States v. Ortiz*, 502 F.Supp.2d 712, 714 (N.D.Ohio 2007).

If a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall,* 128 S.Ct. at 597; *United States v. McIlrath,* 512 F.3d 421, 426 (7th Cir.2008). The further a sentence varies from the advisory guidelines range, the more detailed the district court's explanation must be. *Gall,* 128 S.Ct. at 597 ("[A] major departure should be supported by a more significant justification than a minor one."); *United States v. Wachowiak,* 496 F.3d 744, 749-50 (7th Cir.2007).

### I.   Guidelines Calculation

As noted, the probation officer calculated Swift's advisory guidelines range to be 70-87 months on Count 1 and 60 months (mandatory minimum sentence) on Count II.. Swift has offered no argument that the calculation is erroneous and the court's review of the calculation confirms that it is accurate. Accordingly, we turn next to Swift's contention that the §3553(a) factors justify a sentence less than the advisory guidelines range.

### II.   Application of Factors Pursuant to §3553(a)

In imposing the ultimate sentence, the district court must consider all of the factors set forth in § 3553(a). *United States v. Harris,* 490 F.3d 589, 593 (7th Cir.2007). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;

6

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, consideration of the history and characteristics of the defendant greatly influence this court's decision relating to the appropriate sentence imposed. As the defendant points out, although he received 9 criminal history points, nearly half of them relate to the same marijuana possession charge, a misdemeanor. Swift received 2 points for this conviction and then 2 additional points because the present offenses occurred within two years following his release from custody on the marijuana possession offense. While this is a proper assessment of points under the Guidelines, it appears excessive to the court in light of the fact that the defendant is already facing a 120 mandatory minimum sentence. The Defendant has no prior felony convictions. Further, a sentence at the mandatory minimum provides more than adequate deterrence and satisfies the Congressional mandates that those convicted of drug offenses and, especially those who carry a firearm along with the drugs, serve lengthy sentences.

Moreover, while the offenses here are quite serious, the additional 10 months imposed by the guidelines is not so substantial as to create a significant deterrent effect to the public. There is little difference made to the public's perception of justice by imposing an additional ten months on top of two mandatory sentences.

Finally, the particular circumstances of the defendant, his youth (he is only 25), his lack of youthful guidance,[3] and the fact that the defendant has owned responsibility for his conduct from the time of his arrest onward demonstrate to the court that the additional 10 months assessed by the Guidelines would serve no deterrent or retributive purpose.[4]

Therefore, having considered all of the factors set out in §3553, and the arguments made at the sentencing hearing the court concludes that a sentence of 120 months constitutes a just sentence, that is, one that is sufficient but not greater than necessary to comport with the traditional purposes of criminal sentencing

### Conclusion

Based on the foregoing, the Defendant's request for a variance from the advisory guidelines range is GRANTED.

Entered: This 28th day of July, 2008.　　　　　S/ WILLIAM C. LEE

　　　　　　　　　　　　　　　　　　　　　　　　　　　s/William C. Lee
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

---

[3]Swift's mother and father divorced shortly after his father was arrested for molestation. Swift had no contact with his father during his formative teenage years.

[4]Indeed, the defendant, in his own words stated: "I regret that I decided to earn "fast money" rather than work harder to find employment to support my children...I hope to be able to gain a skill and education while incarcerated to provide a better future for my children."

8